**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JOHN DOE,**<br><br>　　　　　　**Petitioner,**<br><br>　　v.<br><br>**J.L. JAMISON,** *et al.*,<br><br>　　　　　　**Respondents.** | **CIVIL ACTION NO.  26-1906** |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                      **March 31, 2026**

Petitioner John Doe[1] has followed all the rules. He did not illegally enter the United States as a noncitizen. Instead, he lawfully sought and was granted a B-2 tourist visa, which permitted him to enter the country. Petitioner and his family, who were also granted B-2 tourist visas, arrived in the United States on July 17, 2026, were inspected upon arrival, and were admitted by the Department of Homeland Services ("DHS"). Within one month, while lawfully in the country, Petitioner affirmatively applied for asylum, alleging religious persecution based on his Christian faith. Despite receipt of his asylum application, and statutory requirements directing the United States Citizenship and Immigration Services ("USCIS") to timely adjudicate such an application, USCIS has not yet provided Petitioner an interview nor reviewed his asylum application—over 225 days. Rather, while Petitioner awaited an interview pursuant to 8 U.S.C. § 1158, the time remaining on his B-2 visa expired and his asylum application remained pending. Nevertheless, DHS arrested and detained him.

---

[1] Petitioner sought and was granted leave to proceed under a pseudonym in this action. Accordingly, the name John Doe will be used for Petitioner. Mot. to Proceed Under Pseudonym and Seal [Doc. No. 2]; 3/24/26 Order [Doc. No. 5].

Before the Court is Petitioner's 28 U.S.C. § 2241 petition, in which he argues that DHS's detention violates the Immigration and Nationality Act ("INA") and denies him due process, and his motion for a temporary restraining order.[2] The government opposes this petition and argues that Petitioner has failed to exhaust administrative remedies by seeking a bond redetermination hearing. This Court finds that, for the reasons outlined below, this Court has jurisdiction to review the petition and that not only is Petitioner entitled to a bond hearing, he is also entitled to habeas relief based upon violations of the INA.

## I.   BACKGROUND

Petitioner is a citizen of Pakistan with no criminal history who entered the United States via a port of entry in New York, New York on a B-2 tourist visa on July 17, 2025.[3] After inspection, Petitioner and his family were admitted by DHS.[4] Petitioner timely filed an affirmative application for asylum and withholding of removal with USCIS on or about August 15, 2025, based on claims of religious persecution.[5] Petitioner and his family do not have a country to return to based on their fears of persecution on the basis of their Christian faith, including threats they received before fleeing Pakistan.[6]

Petitioner received an "Acknowledgement of Receipt" of his asylum application from USCIS, which informed him that the application was received and pending as of August 15, 2025.[7] This acknowledgment also informed Petitioner that he would be eligible to apply for work authorization after 150 days, which would be provided no sooner than 180 days after his

---

[2] Pet. ¶¶ 10-11 [Doc. No. 1]; Mot. for TRO [Doc. No. 4].

[3] Pet. ¶¶ 10-11, 14 [Doc. No. 1].

[4] *Id*. ¶ 11.

[5] *Id*. ¶¶ 12, 15; Ex. S-1 [Doc. No. 9-1].

[6] Pet., Ex. A-1 [Doc. No. 3].

[7] Pet.'s Ex. S-1 [Doc. No. 9-1].

application was submitted.[8] The acknowledgement stated that Petitioner "may remain in the United States until [his] asylum application is decided."[9]

Following an initial application, asylum seekers must attend a biometrics appointment and be scheduled for an asylum interview with USCIS to evaluate the seeker's claims.[10] Petitioner and his family are still awaiting an official interview with USCIS.[11] While waiting for his asylum interview, Petitioner and his family have lived peacefully in the United States, following the laws of the country and restrictions on their ability to work as noncitizens.

On January 16, 2026, the time on Petitioner's B-2 visa expired.[12] He and his family continued to reside in the country.[13]

On March 23, 2026, Immigration and Customs Enforcement ("ICE") officers went to Petitioner's home in Philadelphia and asked to see Doe.[14] When Petitioner responded, ICE arrested him.[15] Petitioner is currently detained at the Federal Detention Center in Philadelphia.[16] He had not been served with a Notice to Appear nor was he in removal proceedings prior to his arrest.[17] Upon his arrest, Petitioner was served with a Notice to Appear, a Warrant of Arrest, and a Notice of Custody Determination.[18]

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] Pet. ¶¶ 12, 15 [Doc. No. 1].

[12] *Id.* ¶ 17.

[13] *Id.*

[14] *Id.* ¶ 19.

[15] *Id.* ¶¶ 19, 21.

[16] *Id.* ¶ 20.

[17] *Id.* ¶ 18.

[18] Warrant of Arrest, Notice of Custody Determination [Doc. No. 11]; Notice to Appear [Doc. No 10-1].

An initial "MASTER" hearing is set for April 2, 2026, before an immigration court regarding his case.[19] The government contends that prior to this Court's hearing on the instant petition, Doe had not requested a bond hearing via the administrative process. However, the signed Notice of Custody Determination that the government provided to this Court after the hearing clearly establishes this contention is false. On March 23, 2026, after his arrest, Petitioner signed the Notice of Custody Determination[20] and unambiguously marked a box indicating "I do request an immigration judge review of this custody determination."[21] This Notice constitutes a request for a bond redetermination hearing. However, the government did not initiate any plans for a bond redetermination hearing until this Court questioned Respondents at the show cause hearing about the proper procedure for making such a request. Respondents withheld from this Court that Petitioner had already properly requested such a hearing.

On March 24, 2026, one day after his arrest, Petitioner received work authorization following his application for asylum. His wife, a nurse who is not currently detained, also received work authorization on that day.[22]

On March 24, 2026, Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241.[23] He also moved for a temporary restraining order and moved to proceed under a pseudonym and file certain exhibits under seal.[24] This Court ordered the government to show cause why Petitioner's petition should not be granted and scheduled a hearing on the

---

[19] Notice of Internet-based Hr'g [Doc. No 10-2].

[20] Notice of Custody Determination [Doc. No. 11].

[21] Notice of Custody Determination [Doc. No. 11].

[22] *See* Show Cause Hr'g Tr.

[23] Pet. [Doc. No. 1].

[24] Mot. for TRO [Doc. No. 4]; Mot. to Proceed Under Pseudonym and Seal [Doc. No. 2].

matter.[25] The government responded to the petition for a writ of habeas corpus, motion for temporary restraining order, and motion to proceed under a pseudonym.[26] Thereafter, the Court held a hearing on the matter on March 27, 2026.

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where Petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[27] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.

## III.    DISCUSSION

As a preliminary matter, this Court finds that it has jurisdiction to review Petitioner's claims. While the government challenges this Court's jurisdiction over Petitioner's due process claims based on a failure to exhaust, exhaustion is not a jurisdictional matter.[28] To the extent the government challenges this Court's jurisdiction over Petitioner's INA claim, this Court finds that any jurisdiction-stripping provisions of the INA do not apply.[29]

---

[25] 3/24/26 Order [Doc. No. 5].

[26] Gov't Resp. Opp. Habeas Pet. [Doc. No. 10].

[27] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[28] *Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011).

[29] 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(a)(2)(B)(ii), and 8 U.S.C. § 1252(b)(9) do not apply to this case. Section 1252(g) bars review of "any cause of claim . . . arising from the decision or action of the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). It does not reach Petitioner's petition, which challenges only his detention without a bond hearing, not the commencement of removal proceedings.

The limit on federal review in § 1252(a)(2)(B)(ii) concerns only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those official's discretion. Authority under the detention statute is not a matter of discretion, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), so § 1252(a)(2)(B)(ii) does not preclude this Court's consideration of Petitioner's petition.

Finally, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary of United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020). Petitioner's argument that he is unlawfully detained does not challenge his removal. Section 1252(b)(9) does not apply.

### A. Exhaustion

The government argues the Court should not hear Petitioner's claims because he failed to exhaust them in administrative immigration proceedings. Exhaustion "is a matter of sound judicial discretion" when not required by statute.[30] Petitioners seeking habeas relief under § 2241 are generally required to exhaust their claims through administrative procedures.[31] However, a § 2241 habeas petitioner need not exhaust administrative remedies if exhaustion would be futile or if the issue presented involves only statutory construction.[32]

There are no applicable statutory exhaustion requirements. Petitioner is detained pursuant to 8 U.S.C. § 1226(a), which provides for an administrative review of his detention. The government argues that Petitioner is required to seek a bond redetermination hearing before an immigration judge and exhaust the review process before this court may review Petitioner's habeas claim.

At this Court's show cause hearing, Petitioner, for the second time, formally requested a bond hearing and counsel for the government represented that they would communicate the request to ICE and DHS. Respondents' counsel represents that ICE is taking action to provide Petitioner with a bond hearing.

The government, through inaction, willful or negligent, frustrated Petitioner's attempts to exhaust his administrative remedies prior to Petitioner's seeking this Court's intervention. Despite seeking a bond redetermination hearing on his Notice of Custody Determination form, there is no evidence that ICE or DHS made a record of or acted on the request. Indeed, the

---

[30] *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980).

[31] *Callwood v. Enos*, 230 F.3d 627, 643 (3d Cir. 2000).

[32] *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists.); *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (A petitioner does not need to "exhaust administrative remedies where the issue presented involves only statutory construction").

government consistently claimed that Petitioner had not sought a bond hearing prior to filing the instant action.[33] Because Petitioner's attempt to seek a bond redetermination hearing prior to this Court's show cause hearing was futile, exhaustion is not necessary.[34] The purposes of exhaustion are not served in this case where Petitioner's attempts to seek administrative review were ignored.[35]

While the government now claims it will provide a bond hearing, this Court will order that it do so. Section 1226(a) entitles Petitioner to a bond redetermination hearing, and Petitioner's detention without a bond hearing, despite his requests for one, violates due process. Accordingly, this Court will order the government to promptly provide Petitioner a bond redetermination hearing. As the government has promised to do this, the Court assumes the government has no objection.

Because the government must provide a bond hearing to Petitioner, he must exhaust his administrative remedies before this Court may consider his remaining due process claims that a bond redetermination hearing and appeal to the Board of Immigration Appeals does not provide due process.[36] Accordingly, this Court cannot consider the due process claims as to the adequacy of the administrative process at this juncture.

---

[33] *See* Gov't Resp. Opp. Habeas Pet. at 2 [Doc. No. 10].

[34] While the Court is assured that Petitioner appreciates Respondents' counsel's efforts to convey his request for a bond hearing and arrange a time for that hearing, the current circumstances make it impossible for such a hearing to be adequate. Petitioner is detained in a facility that is not equipped to conduct video conference hearings, which is how DHS plans to conduct his bond hearing.

[35] *See Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied, however, when 'none of the basic goals (of the doctrine) would be served.'" (quoting *U.S. ex. Rel. Marrero v. Warden, Lewisburg Penitentiary*, 483 F.2d 656, 659 (3d. Cir. 1973)).

[36] Petitioner's due process claims alleged that his detention is not reasonably related to a justified regulatory purpose and that he has not received an individualized justification for his detention. Pet. ¶¶ 24-36 [Doc. No. 1]. He also alleges that bond hearings in immigration court are inadequate remedies due to the statutory burden on petitioners to prove they are not flight risks or dangers to the community. *Id*. at 3. These claims are not ripe for review by this Court until and unless Petitioner fully exhausts the administrative process.

### B.      Statutory Claim

If there is no administrative process to exhaust or a claim is a matter of purely statutory interpretation, then exhaustion is not required. Here, Petitioner raises a claim of statutory violation as well as violation of his due process.[37] This Court's review of his statutory claim is purely a matter of statutory interpretation, so it is not barred by a failure to exhaust.

The INA provides for asylum applications by any noncitizen who is physically present in the United States.[38] An asylum seeker must prove by clear and convincing evidence that he filed the asylum application within one year of his arrival in the United States.[39] Petitioner filed his affirmative asylum application within one month of his arrival, inspection, and admittance to the country.[40]

Under the asylum statute, the Attorney General is required to establish a procedure for the consideration of asylum applications.[41] The statute does not entitle asylum applicants to employment authorization; however, asylum seekers may be provided employment authorization 180 days after the date of filing an asylum application.[42] On March 24, 2026, over 200 days after applying for asylum, Petitioner received employment authorization. However, the government detained him one day before he received the authorization.

Congress specifies a timeline and process for considering asylum applications. "[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed," and "in the absence

---

[37] Pet. ¶ 37 [Doc. No. 1].

[38] 8 U.S.C. § 1158(a)(1).

[39] 8 U.S.C. § 1158(a)(2)(B).

[40] Pet. ¶¶ 11,12 [Doc. No. 1].

[41] 8 U.S.C. § 1158(d)(1).

[42] 8 U.S.C. § 1158(d)(2).

of exceptional circumstances, final administrative adjudication of the asylum application . . .

shall be completed within 180 days after the date an application is filed."[43] In the absence of

exceptional circumstances, these timelines are mandatory, not advisory. The use of the word

"shall" imposes an obligation on USCIS to process asylum applications in a timely fashion.

While § 1158 includes a provision establishing that there is "[n]o private right of action"

regarding any asylum procedures described in 8 U.S.C. § 1158(d) such that "[n]othing in this

subsection shall be construed to create any substantive or procedural right or benefit that is

legally enforceable by any party against the United States or its agencies or officers or any other

person,"[44] Petitioner need not have a private right of action to allege a statutory violation in a

habeas action.[45] Accordingly, if petitioner is detained in violation of the INA based on unlawful

failure to adjudicate his asylum application under § 1158, then he is entitled to habeas relief.

Pursuant to § 1158, Petitioner timely applied for asylum while lawfully in the country.[46]

After submitting his asylum application, Petitioner received an "Acknowledgement of Receipt"

of his application.[47] This acknowledgement informed Petitioner that his asylum application was

---

[43] 8 U.S.C. § 1158(d)(5)(A)(ii-iii).

[44] 8 U.S.C. § 1158(d)(7).

[45] Many courts have found that violations of § 1158(d)(5)(A) do not warrant mandamus relief or relief under the Administrative Procedures Act. *Alvarez v. Raufer*, No. CV 19-3155, 2020 WL 5210992 (E.D. Pa. Sep. 1, 2020) (granting summary judgment for defendants based on § 1158's lack of a private right of action in case seeking writ of mandamus to adjudicate asylum application based on violations of § 1158 in failing to adjudicate the application within 180 days); *Ahmad v. U.S. Citizenship & Immigr. Servs.*, No. CV 23-3332 (ES) (CLW), 2024 WL 3272832 (D.N.J. July 2, 2024) (granting motion to dismiss claims alleging violations of APA and seeking relief under Mandamus Act for failure to timely adjudicate asylum application based on § 1158's lack of a private right of action); *see also, e.g., Salloum v. United States Dep't of Homeland Sec.*, No. CV 25-00334 (ES), 2026 WL 74197 (D.N.J. Jan. 9, 2026); *Baisheng Chen v. Wolf*, No. 19-CV-9951 (AJN), 2020 WL 6825681 (S.D.N.Y. Nov. 20, 2020); *Arabzada v. Donis*, 725 F. Supp. 3d 1 (D.D.C. 2024); *Liuqing Zhu v. Cissna*, No. CV 18-9698 PA (JPRX), 2019 WL 3064458 (C.D. Cal. Apr. 22, 2019). However, a private right of action is not required to obtain habeas relief.

[46] Pet. ¶¶ 11,12 [Doc. No. 1].

[47] Ex. S-1 [Doc. No. 9-1].

received and pending as of August 15, 2025.[48] It informed Petitioner that "You may remain in the United States until your asylum application is decided."[49] It also informed Petitioner that he *could not leave* the United States without authorization or he may be considered to have abandoned his asylum application.[50]

The acknowledgment clarifies that it does not confer any immigration status or benefit. However, at the time of Petitioner's application, he already had lawful status under his tourist visa. Under the INA, USCIS was required to provide Petitioner with an interview well within the valid time of his tourist visa. It failed to do so, and the government has identified no exceptional circumstances to justify that failure, nor its failure to fully adjudicate the application within 180 days. Two-hundred-and-twenty days passed between Petitioner's application for asylum and his arrest.

The failure to provide an asylum interview or fully adjudicate Petitioner's asylum application within the statutory time frame violates the INA. Further, Petitioner's detention prevents him from continued pursuit of his affirmative asylum application, despite him correctly following instructions and rules dictated by DHS.

Further, an asylum seeker who has a "bona fide application for asylum pending under section 1158 of this title" shall not have any period of time during which his application is pending "taken into account in determining the period of unlawful presence in the United States" under the inadmissibility provisions of the INA.[51] Accordingly, the inadmissibility provisions of the INA do not count any time that a noncitizen is in the country after filing an asylum

---

[48] *Id*.

[49] *Id*.

[50] *Id*.

[51] 8 U.S.C. § 1182(a)(9)(B)(iii)(II).

application as time that noncitizen is unlawfully in the country. The deportability statute does not contain a corresponding provision exempting asylum applicants under § 1158 from its terms.[52] However, the Court may look to the INA as a whole in interpreting the asylum statute. Statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[53]

This Court's interpretation of the INA's asylum provision is supported by the Code of Federal Regulations, which states that asylum applicants are deemed lawfully present for the purpose of applying for certain benefits.[54] Specifically, those asylum applicants who have been granted employment authorization, like Petitioner, are lawfully present in the United States.

This Court does not have jurisdiction to review the removability of Petitioner, nor the validity of his asylum claims. However, the Court may look at the INA in its entirety to interpret the asylum statute and determine whether Petitioner's detention undermines and violates the asylum statute. The Court finds that his detention does just that.

Petitioner was entitled, under § 1158, to an interview and adjudication of his asylum claim prior to his detention. Further, any time he is currently accruing does not qualify as a period of unlawful presence because he received employment authorization. His detention has stripped USCIS of authority over his asylum application and has forced him into a defensive

---

[52] *See* 8 U.S.C. § 1227.

[53] *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (cleaned up).

[54] 8 C.F.R. § 1.3(a)(5) ("Applicants for asylum under section 208(a) of the Act and applicants for withholding of removal under section 241(b)(3) of the Act or under the Convention Against Torture who have been granted employment authorization, and such applicants under the age of 14 who have had an application pending for at least 180 days [are lawfully present in the United States.]"). *See also Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1172 (N.D. Ca. 2023) ("While an asylum application is pending, asylum applicants . . . are deemed to be "lawfully present" for the purposes of applying certain benefits.").

posture to argue his asylum case from detention. Due to the failure to adjudicate Petitioner's asylum application in accordance with the INA and the government's repeated representations that Petitioner may remain in the country until the application's adjudication, his detention violates the asylum provisions of the INA.

According to the INA, the Code of Federal Regulations, and all representations to Petitioner in the course of his asylum application process, Petitioner was permitted to remain in the United States during the course of his asylum application. Under the INA, the government was required to adjudicate his asylum application before his lawful status expired. Because the government's failure to adjudicate the asylum application precipitated his detention, Petitioner's detention violates the INA.

The Court notes that the arrest and detention of affirmative applicants for asylum, who are patiently waiting for years-long delays in asylum adjudications, in violation of the INA, is an abrupt policy change. Several presidential administrations, including the first Trump administration, did not arrest and detain affirmative asylum applicants who applied with lawful status. This conduct ought to be considered.[55] This policy change, coupled with the failure to comply with the INA's asylum timeline, as applied to Petitioner and those similarly situated, strips § 1158 of its meaning.

Because Petitioner is detained in violation of the INA, the Court will order his immediate release.[56]

---

[55] *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). *See also Avila v. Bondi*, No. 25-3248, -- F.4th --, 2026 WL 819258, at *15 (8th Cir. Mar. 25, 2026) (Erickson, J., dissenting) (interpreting IIRIRA in accordance with years of precedent from all three branches of government).

[56] *See Karshranov*, 2:25-cv-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 533 U.S. 723, 779 (2008)).

**IV.   CONCLUSION**

DHS lacked legal authority to detain Petitioner John Doe prior to adjudication of his affirmative asylum application, and it lacked authority to detain him pursuant to 8 U.S.C. § 1226(a) without providing a bond hearing, as requested by Petitioner. The Court will grant his petition, and an order will be entered.